UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JESSICA H.,[1] | Case No. 3:21-CV-00360-MK |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| COMMISSIONER, Social Security Administration, | |
| Defendant. | |

**KASUBHAI,** United States Magistrate Judge:

Plaintiff Jessica H. seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act (the "Act"). This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in accordance with Fed. R. Civ. Pro. 73 and 28 U.S.C. § 636(c). *See* ECF No. 13. For the reasons below, the Commissioner's final decision is AFFIRMED.

---

[1] In the interest of privacy, the Court uses only the first name and last name initial of non-government parties whose identification could affect Plaintiff's privacy.

Page 1 — OPINION AND ORDER

## PROCEDURAL BACKGROUND

Plaintiff filed for SSI and DIB in January 2017. Tr. 90–101.[2] At a later hearing, she withdrew her application for DIB and amended her alleged onset date to September 1, 2018. Tr. 55. Her applications were denied initially and upon reconsideration. Tr. 100, 132. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held in April 2019. Tr. 51–82. On June 3, 2019, the ALJ issued a decision finding the Plaintiff not disabled within the meaning of the Act. Tr. 154–64. The Appeals Council vacated and remanded the case based on Plaintiff's request. Tr. 273, 174, 175. After a second hearing was held on August 11, 2020, Tr. 38–50, the ALJ issued a decision finding the Plaintiff not disabled within the meaning of the Act on September 8, 2020. Tr. 16–29. This appeal followed.

## FACTUAL BACKGROUND

Plaintiff was 24 years old at her alleged onset date. Tr. 90. She has a high school education and no past relevant work. Tr. 28. Plaintiff alleged disability based on several physical and mental impairments, including congenital loss of the left forearm and hand, persistent depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, right lateral epicondylitis, deQuervain's Syndrome, right shoulder tendinitis, and gastrointestinal issues. Tr. 19, 27, 56.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a

---

[2] "Tr." citations are to the Administrative Record. ECF No. 19.

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If

not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, they are not disabled; if they cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff met the insured requirements of the Act and had not engaged in substantial gainful activity since her alleged onset date. Tr. 19. At step two, the ALJ found that Plaintiff had the following severe impairments: congenital loss of the left forearm/hand, persistent depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or

combination thereof that met or medically equaled the severity of a listed impairment. Tr. 21. The ALJ found that Plaintiff had the RFC to perform light work with the following limitations:

> [Plaintiff] is further precluded from any crawling or climbing of ramps, ladders, or scaffolds, and … is capable of only one-armed work activities. She needs to avoid exposure to unprotected heights, moving machinery, and similar hazards. She is limited to simple, repetitive, routine tasks, with no more than occasional contact with the general public.

Tr. 22. At step four, the ALJ found that Plaintiff had no past relevant work. Tr. 28. At step five, the ALJ found, given Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy such that Plaintiff could sustain employment despite her impairments. Tr. 28. The ALJ thus found Plaintiff was not disabled under the Act. Tr. 29.

## DISCUSSION

Plaintiff asserts remand is warranted for four reasons: (1) the ALJ erred by improperly rejecting Plaintiff's subjective symptom testimony; (2) the ALJ failed to identify a legally sufficient basis to reject the opinions of Plaintiff's treating physician and occupational therapist; (3) the ALJ failed to include Plaintiff's right upper extremity conditions as severe impairments and (4) the ALJ failed to address Plaintiff's supplemental briefing that challenged the vocational expert's ("VE") testimony. The Court addresses each argument in turn.

### I. Subjective Symptom Testimony

Plaintiff assigns error to the ALJ's evaluation of her subjective symptom testimony. Pl.'s Op. Br. 9–11. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so."

*Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). "A general assertion [that] the claimant is not credible is insufficient; instead, the ALJ must state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (citation and quotation marks omitted). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Social Security Ruling ("SSR") 16-3p provides that "subjective symptom evaluation is not an examination of an individual's character," and requires that the ALJ consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms.[3] SSR 16-3p, *available at* 2016 WL 1119029, at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Plaintiff testified she has pain in her right hand and arm. Tr. 59, 70. She also testified that the joints in her shoulder and elbow dislocate. Tr. 70–71. Due to her symptoms, she had difficulty lifting and needed a coworker's assistance when she worked. Tr. 68.

---

[3] Effective March 28, 2016, SSR 16-3p superseded and replaced SSR 96-7p, which governed the assessment of claimant's "credibility." *See* SSR 16-3p.

The ALJ rejected Plaintiff's subjective symptom testimony. Tr. 23. The Commissioner relies on three of the ALJ's stated rationales in defending the decision on appeal: (A) an inconsistency with the medical record and objective evidence; (B) that Plaintiff left work for non-disability related reasons; and (C) an inconsistency with her activities of daily living. Def.'s Br. 9–11.

### A. Inconsistency with Medical Record

The Commissioner asserts that the ALJ properly discounted Plaintiff's testimony due to inconsistencies with the medical record. Def.'s Br. 9–10; Tr. 19–20. In some circumstances, an ALJ may reject subjective complaints where the claimant's "statements at her hearing do not comport with objective evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

The ALJ here relied on treatment records from several separate exams in rejecting Plaintiff's subjective symptom testimony. Tr. 19–20. Plaintiff was diagnosed with deQuervain's tenosynovitis. Tr. 2908. However, in multiple exams throughout 2019 and 2020 Plaintiff's range of motion was normal. Tr. 2869, 3228, 3438. She had no signs of atrophy or wasting in her right arm, which would have suggested lack of use. Tr. 2907. Imaging of Plaintiff's right arm also appeared normal. Tr. 3460. In June 2020, Plaintiff reported right hand and arm pain but attributed it to overuse. Tr. 3379. Plaintiff also showed 4/5 or 5/5 strength in her right arm during multiple exams. Tr. 2932, 3212, 3270.

Although Plaintiff offers an alternative interpretation of evidence, the ALJ's interpretation was rational and therefore must be upheld. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) (explaining that variable interpretations of the

evidence are insignificant if the Commissioner's interpretation is a rational reading of the record).

### B. Reasons for Leaving Work

The Commissioner also asserts that the ALJ properly discounted Plaintiff's testimony because she left her job for non-disability related reasons. Def.'s Br. 10–11; Tr. 63. The Ninth Circuit has held that an ALJ may reject a claimant's testimony where they stop working for reasons unrelated to their impairments. *Bruton v. Massanari*, 268 F.3d 824 (9th Cir. 2001) *as amended* (Nov. 9, 2001) (finding reports that the claimant "left his job because he was laid off, rather than because he was injured" a clear and convincing reason for rejecting subjective complaints).

Here, Plaintiff testified that she stopped working as a caregiver for a child because the child "no longer wanted services." Tr. 63. This was a legally permissible rational for rejecting her testimony under *Bruton*.

### C. Activities of Daily Living

Finally, the Commissioner contends the ALJ properly rejected Plaintiff's testimony based upon her activities of daily living. Def.'s Br. 11. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639. A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

Plaintiff's minimal level of activities in this case fall well short of the demanding clear-and-convincing standard. The Commissioner cites Plaintiff's ability to sweep, drive herself, and care for and carry her 30-pound infant as conflicting with Plaintiff's testimony. Def.'s Br. 11; Tr. 24. The Ninth Circuit has consistently instructed, however, that such a modest level of activity is not sufficient to reject subjective complaints. *See Vertigan*, 260 F.3d at 1050 ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.") (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

However, although the ALJ erred in relying on Plaintiff's activities of daily living, the ALJ properly discounted Plaintiff's subjective symptom testimony based on inconsistencies in the medical record and the reason Plaintiff stopped working. Accordingly, the overall subjective symptom evaluation is supported by substantial evidence and is therefore affirmed. *See also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (explaining that an error in an ALJ's subjective symptom analysis is harmless where an ALJ provides at least one valid reason for discounting testimony).

## II.   Medical Opinion Evidence

Plaintiff next challenges the ALJ's assessment of the medical opinion evidence. Pl.'s Br. 11–12. The ALJ is responsible for resolving conflicts in the medical record, including conflicting doctors' opinions. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The law distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. See 20 C.F.R. §§ 404.1527, 416.927.  The opinions of treating physicians are generally accorded greater weight than the opinions of non-

treating physicians. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another doctor can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Where a doctor's opinion is contradicted, however, the ALJ must provide "specific, legitimate reasons" for discrediting the opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). An ALJ can meet this burden by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quotation omitted).

Under Social Security Ruling ("SSR") 06-03p, which was in effect at the time that Plaintiff filed her claim, "acceptable medical sources" include licensed physicians; licensed or certified psychologists; licensed optometrists; licensed podiatrists; and qualified speech-language pathologists. See 20 C.F.R. §§ 404.1513(a), 416.913(a) (effective September 3, 2013 to March 26, 2017). Occupational Therapists, however, are considered "other" non-acceptable medical sources. *See* 20 C.F.R. §§ 404.1513(a), 404.1513(d). However, "depending on the facts of the case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the opinion of a treating source." 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1); SSR 06-03p, at *5. This is because "other sources" may have information "based on a special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, at *2 (emphasis added). To reject an "other" source opinion, ALJs must provide "germane" reasons. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).

Jessica Butler, D.O., served as Plaintiff's primary care physician, beginning in 2017. Tr. 3010. In a March 2019 letter, Dr. Butler checked a box on a letter supplied by Plaintiff's attorney that she had "reviewed the Residual Functional Capacity Assessment of Michelle A. Gollobit, OT and [she] agree[d] with the diagnoses and conclusions as outlined in this report, in every particular." Tr. 3198.

Gollobit worked with Plaintiff for less than a month before providing the assessment. Tr. 3014, 3017, 3200, 3203. She opined that Plaintiff's functional limitations included occasional reaching and manipulation and lifting less than ten pounds with her right upper extremity. Tr. 3016, 3202. Gollobit also concluded that Plaintiff's limitations would cause Plaintiff "to miss 16 hours [of work] . . . or more per month." Tr. 3017, 3203.

The ALJ properly assigned "little weight" to Dr. Butler's opinion. Tr. 27. Dr. Butler did not provide any reasoning as to why she concurred with Gollobit's assessment. An "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Thomas v. Barnhart*, 947, 957 (9th Cir. 2002)).

The ALJ also properly assigned "little weight" to Gollobit's opinion. Tr. 27. Gollobit had treated Plaintiff for less than one month at the time she wrote her opinion. Tr. 27, 3014, 3017, 3200, 3203. An ALJ may consider the length of a treatment relationship when evaluating the reliability of an "other source" opinion. *See* 20 C.F.R. § 416.927(c)(2)(i), (f).

In sum, the ALJ supplied legally sufficient reasons for rejecting Dr. Butler's and Gollobit's opinions.

**III.   Severe Impairment**

Plaintiff argues that the ALJ erred in excluding Plaintiff's right extremity pain as a severe impairment. Pl.'s Op. Br. 8–9. At step two, the Commissioner must determine whether the claimant has a "medically severe impairment or combination of impairments." *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also Stout v. Comm'r Soc. Sec Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). A severe impairment "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a). The step two threshold, however, is low:

> [A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work . . . . [T]he severity regulation is to do no more than allow the Secretary to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working.

SSR 85-28, *available at* 1985 WL 56856 at *2 (Nov. 30, 1984) (internal quotations omitted). Put differently, the step two inquiry "is 'a *de minimis* screening device to dispose of groundless claims.'" *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)).

The Ninth Circuit has held, however, that an error in failing to designate a specific impairment as severe can be harmless where it does not prejudice a claimant because the ALJ nonetheless considers the impact of the impairment in formulating the claimant's RFC. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (holding that any error in omitting an impairment at step two was harmless when step two was resolved in claimant's favor); *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (finding harmless error where the ALJ neglected to find

"antisocial personality disorder" severe but nonetheless considered the claimant's "personality disorder" in crafting the RFC).

Here, any error was harmless because the ALJ considered and rejected Plaintiff's complaints of right upper extremity pain. *See supra* § I. Where an ALJ errs by failing to list a severe impairment at step two, the error is harmless if the ALJ considers all of a claimant's functional limitations at step five. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Thus, because the ALJ considered Plaintiff's right extremity pain and continued the sequential evaluation, any error by the ALJ was harmless.

**IV.   Vocational Evidence**

Finally, Plaintiff assigns error to the ALJ's assessment of the VE's testimony for two reasons: (1) the ALJ did not address discrepancies between the VE's testimony and the *Dictionary of Occupational Titles* ("DOT"); and (2) the ALJ failed to address Plaintiff's supplemental briefing on job numbers. Pl.'s Op. Br. 6.

During step five of the evaluation process, after the ALJ has determined the claimant cannot perform past relevant work, the ALJ must determine whether the claimant is capable of performing other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a), 416.920(a). ALJ's often seek the expertise of VE's for guidance on such issues. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). VE's are professionals under contract with the Social Security Administration to provide impartial testimony in agency proceedings. *Id.*

When a VE testifies at the ALJ hearing they discuss "what jobs the claimant, given his or her residual functional capacity, would be able to do" and "the availability of such jobs in the national [or regional] economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The testimony given by the VE "is regarded as inherently reliable, [therefore], there is no need for an

ALJ to assess its reliability." *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017). However, a "VE['s] testimony is not incontestable." *Id.* For example, if the DOT conflicts with the VE testimony "the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the" DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007).

Additionally, a claimant can challenge a vocational expert's testimony. *See Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2018). If a claimant submits job numbers that display a "vast discrepancy [with] the VE's job numbers . . . presumably from the same source," the discrepancy cannot be ignored and the "inconsistency in the record must be addressed by the ALJ on remand." *Buck*, 869 F.3d at 1052.

Here, Plaintiff asserts that the ALJ did not reconcile a discrepancy between the VE's testimony and the DOT on the skill level of a security guard. Pl.'s Op. Br. 8. During the April 2019 hearing, the VE indicated security guard was an unskilled profession; however, the DOT lists it as a semiskilled profession. Tr. 74. The VE diverged from the DOT based on his experience, the short period of on-the-job training, and the type of tasks an unarmed security guard performs. Tr. 74–75, 77–78. The ALJ accepted the VE's reasoning as a reasonable explanation and a basis for relying on the VE over the DOT. Thus, the ALJ reconciled the conflict and did not err.

However, Plaintiff's argument that the ALJ's failure to comment on her supplemental brief is well taken. At the April 2019 hearing, the VE testified that approximately 475,000 security guard positions existed in the national economy. Tr. 74–75. Plaintiff submitted a supplemental brief, which the ALJ accepted into evidence, that there were no more than 265,906 security guard positions and that only 79.1% of the positions were full time. Tr. 154, 430–47.

Page 14 — OPINION AND ORDER

The ALJ's June 3, 2019 unfavorable decision did not address the supplemental brief. *See* Tr. 16–29. After Plaintiff requested review before the Appeals Council, that body specifically remanded for another hearing and directed the ALJ to, among other things, identify and resolve any conflicts in the occupational evidence. Tr. 175. The ALJ erred in failing to address the discrepancy in the decision. *See Buck v. Berryhill*, 869 F.3d 1040, 1052 (9th Cir. 2017) ("In this case, the vast discrepancy between the VE's job numbers and those tendered by [the claimant], presumably from the same source, is simply too striking to be ignored.").

The Commissioner asserts any error made was harmless because Plaintiff's disputed numbers are still significant. Def.'s Br. 4. An ALJ's decision "will not be reversed for errors that are harmless." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). Legal errors are harmless when they are inconsequential to the non-disability decision. *Id.* at 1055.

Here, as noted, Plaintiff's supplemental brief cites 265,906 security guard jobs in the United States national economy. Tr. 446. Although this number is less than the VE's 475,000 job estimate, Plaintiff's job numbers are still well above what the Ninth Circuit has approved of as "significant." *See Gutierrez v. Comm'r, Soc. Sec.*, 740 F.3d 519, 527-29 (9th Cir. 2014) (holding that 25,000 jobs nationally is a significant number). Accordingly, any error in failing to discuss Plaintiff's rebuttal evidence was harmless.

///

///

///

Page 15 — OPINION AND ORDER

## CONCLUSION

For the reasons discussed above, the Commissioner's decision was based on substantial evidence. Accordingly, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this <u>16th</u> day of September 2022.

<u>s/ Mustafa T. Kasubhai</u>
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge